UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| BERRYTOWN APARTMENTS ASSOCIATES, LTD. and LYNNE ACRES ASSOCIATES A KENTUCKY LIMITED PARTNERSHIP<br>    PLAINTIFFS,<br><br>v.<br><br>NATIONWIDE ASSURANCE COMPANY<br>    DEFENDANT, | 3:25-cv-166-CHB |

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiffs, Berrytown Apartments Associates, LTD ("Berrytown") and Lynne Acres Associates, A Kentucky Limited Partnership ("Lynne Acres") (collectively "Plaintiffs"), by and through their undersigned counsel, bring this Complaint and Jury Demand against Nationwide Assurance Company ("Nationwide" or "Defendant") arising out of Nationwide's failure to honor its obligations under the applicable insurance policies. In support thereof Plaintiffs state and allege as follows:

### I.   PARTIES

1. Plaintiff Berrytown is a Kentucky ULPA Limited Partnership whose primary county is Jefferson County, Kentucky.

2. Plaintiff Lynne Acres is a Kentucky Limited Partnership whose primary county is Shelby County, Kentucky.

3. Plaintiffs Berrytown and Lynne Acres are each Kentucky limited partnerships owned by Cimmaron Properties, LLC as the general partner and Michael Hess as the limited partner.

4. Defendant is a foreign insurance company with a principal office address in Columbus, OH. Defendant is a citizen of Ohio.

5. Plaintiffs were the named insureds insurance policies issued by Defendant. The material terms of the policies were substantially similar.

6. On information and belief, Defendant may be served with service of process at the following address:

> Nationwide Assurance Company
> c/o Corporation Service Company
> 421 W. Main St.
> Frankfort, KY 40601

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiffs' claims as the amount in controversy exceeds $75,000.

8. This Court has jurisdiction over the parties because diversity of citizenship exists pursuant to 28 U.S.C. § 1332.

9. This Court has personal jurisdiction over Defendant because it does business in Kentucky including the issuance of contracts covering damage to property of Kentucky insureds, and it processes claims in Kentucky involving Kentucky insureds.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this District and a substantial part of property that is the subject of the action is situated in this District.

## III. STATEMENT OF FACTS

11. This is a first-party insurance case stemming from extensive damage to Plaintiffs' properties caused by wind, water, and hail damage.

12. Plaintiff Berrytown is the owner of real property located at 12408 through 12424 Hersfield Rd., Louisville, KY 40223-2182 (the "Berrytown Property"). The Berrytown Property is comprised of at least 6 multi-unit residential buildings.

13. Plaintiff Lynne Acres is the owner of real property located at 601 Lynne Acres, Shelbyville, KY 40065-1693 (the "Lynne Acres Property"). The Lynne Acres Property is comprised of at least 5 multi-unit residential buildings and an office/laundry building.

14. The roofs at each of the Properties are shingle roofs with Owens Corning Classic shingles in the Onyx Black color.

15. Owens Corning Classic shingles are not currently produced.

16. Defendant issued an insurance policy to Plaintiff Berrytown, Policy No. ACP BP015624438193, which covered certain damage to the Berrytown Property for the coverage period July 1, 2022, to July 1, 2023 (the "Berrytown Policy"). The Berrytown Policy covered the Berrytown Property against loss by wind, hail, and storm damage among other perils.

17. Defendant issued an insurance policy to Plaintiff Lynne Acres, Policy No. ACP BP015624458107, which covered certain damage to the Lynne Acres Property for the coverage period July 15, 2022, to July 15, 2023 (the "Lynne Acres Policy"). The Lynne Acres Policy covered the Lynne Acres Property against loss by wind, hail, and storm damage among other perils.

18. The Berrytown Policy and the Lynne Acres Policy contain substantially similar material terms.

19. On March 3, 2023, the Berrytown and Lynne Acres Properties were damaged by a wind and hail storm (the "Storm).

20. Plaintiffs promptly made claims to Defendant under the Berrytown and Lynne Acres Policies for damage from the Storm (the "Claims").

21. Plaintiffs have each performed all conditions precedent to their recovery under the applicable Policies. Plaintiffs paid all the premiums under the Policies and cooperated with Defendant's investigation of the Claims.

22. The damage from the Storm included, but was not limited to, damage to the roofs at the Properties.

23. The Policies, by their terms, include coverage for the Claims.

24. Rather than conducting a complete, full and fair investigation of the Claims, Defendant conducted a results-oriented investigation designed to undervalue the Claims, and further violated the terms of the insurance policies by failing to pay for all of the covered damaged caused by the Storm.

25. On March 31, 2023, Defendant issued an initial claim payment of $10,747.10 to cover the replacement of limited Storm-damaged shingles for the Berrytown Property

26. On March 31, 2023, Defendant issued an initial claim payment of $6,291.79 to cover the replacement of limited Storm-damaged shingles at the Lynne Acres Property.

27. The Kentucky Administrative Regulations (806 KAR 12:095 Section 9(1)(b)) state "[i]f a loss requires replacement of items and the replaced items do not reasonably match in quality, color, and size, the insurer shall replace all items in the area so as to conform to a reasonably uniform appearance. This applies to interior and exterior losses. The insured shall not bear any cost over the applicable deductible."

28. Kentucky Department of Insurance Advisory Opinion 2023-08, interpreting the Kentucky Administrative Regulations, states that "The intent of this regulatory provision is to

protect the value of an insured's home or other real property, which could be damaged by the installation of a non-uniform item…..[i]f the same shingles are not available, the Department would review the quality, color, and size of replacement shingles to determine whether a reasonable match has been met."

29. The shingles on the roof of the Properties are no longer manufactured.

30. In documentation provided to Defendant, the shingle manufacturer, Owens Corning, confirmed that the shingles currently installed at the Properties are no longer manufactured. Owens Corning also confirmed that it does not currently produce shingles that are compatible with the shingles at the Properties, and that it does not allow the mixing of current shingle products with the discontinued product currently on the roofs.

31. Owens Corning specifically stated that any new shingles produced by it **will not match** the older shingles currently on the roofs.

32. Based on the Kentucky Administrative Regulations, the Kentucky Department of Insurance Advisory Opinion 2023-08, and the statements by Owens Corning, Plaintiffs requested that Defendant cover the full replacement of roofs at the Properties.

33. Further, by refusing to pay for all damages resulting from Plaintiffs' Claims, Defendant forced Plaintiffs to hire a public adjuster to assist them with the Claims. Plaintiffs' public adjuster submitted information and documents regarding the claimed damages including photographs, correspondence, shingle reports, and a supporting estimate for the reasonable and necessary scope and cost of repairs.

34. On December 18, 2023, Defendant conducted a re-inspection of the Properties, and found additional Storm damage not originally observed by Defendant.

35. Defendant wrongly indicated that the shingles at the Properties were still in production.

36. On January 8, 2024, Defendant issued a partial denial letter on each of the Claims, noting that Defendant would cover limited wind damage caused by the March 3, 2023 Storm, but would not cover alleged mechanical damage to the roof or roof appurtenances, or other damages to the exterior of the Properties. Defendant also refused to pay for the replacement of the roofs due to the matching issue.

37. On January 8, 2024, Defendant advised that the March 31, 2023, Berrytown payment was no longer valid, and issued a new Actual Cash Value payment in the amount of $12,553.73 for the allegedly limited shingle damage at the Berrytown Property caused by the Storm.

38. On January 8, 2024, Defendant also advised that the March 31, 2023, Lynne Acres payment was no longer valid, and issued a new Actual Cash Value payment in the amount of $6,595.22 for the allegedly limited shingle damage at the Lynne Acres Property caused by the Storm.

39. On February 6, 2024, Defendant reiterated its partial denial of the Claims, stating that "our prior coverage determination previously communicated remains unchanged for reasons previously outlined."

40. The February 6, 2024, letter also stated that the roof was repairable and recommended using "an Onyx Black roof shingle…produced by the same Manufacturer."

41. On March 28, 2024, Defendant emailed Plaintiffs recommending replacement of the shingles on the roof with an "Onyx Black shingle" that "includes a limited Algae-resistant

6

warranty." Defendant stated "Importantly, there are no other discernable differences between these two shingles."

42.   Plaintiffs located and installed the shingles recommended by Defendant. However, the shingles Defendant recommended did not provide a "reasonably uniform appearance" at the Properties. In fact, the new shingles recommended by Defendant were *noticeably* darker than the in-situ shingles.

43.   Plaintiffs provided Defendant with pictures illustrating the matching issue with the shingles recommended by Defendant.

44.   Only *after* issuing its denial letter and *after* receiving a demand letter from Plaintiffs' counsel did Defendant hire an engineer to conduct testing to determine the exact type of shingle at the Property.

45.   Defendant's engineer confirmed that the shingle currently on the roofs at the Properties is no longer manufactured.

46.   On February 15, 2025, in correspondence to Plaintiffs' counsel, and without consulting with the Kentucky Department of Insurance or acknowledging the color-matching issues, Defendant stated that "the replacement shingles satisfy the KY DOI Bulletin, Advisory Opinion 2023-08 matching requirements and the criteria for direct physical loss or damage to covered property from a covered cause of loss."

47.   Defendant's February 15, 2025, correspondence reiterated that "our prior coverage determination remains unchanged."

48.   Throughout the investigation Plaintiffs provided information to Defendant's adjusters as well as opportunities for the adjusters to inspect the Property. However, Defendant and its adjusters failed to conduct a full and fair and reasonable investigation of Plaintiffs' Claims,

including as to the full scope and extent of covered losses and damages of Plaintiffs' insured Properties and as to the reasonable and necessary scopes of repairs.

49. Defendant wholly failed to estimate the cost of the roof replacement to the Properties. Defendant has underpaid Plaintiff Berrytown by at least $300,000 for covered damages to the roofs. Defendant has underpaid Plaintiff Lynne Acres by approximately $200,000 for covered damages to the roofs.

50. Defendant has failed to make an attempt to settle Plaintiffs' Claims in a fair manner, although its liability to Plaintiffs under the Policies is without dispute.

51. Defendant has failed and refused to pay Plaintiffs in accordance with its promises under the Policies and applicable law, and has wrongfully underpaid Plaintiffs' Claims for covered damages to the Properties.

52. The amount of Plaintiffs' damages is well established and has been provided to Defendant. Plaintiffs' covered property damage has not been paid despite Plaintiffs having performed all conditions precedent to recovery under the Policies.

53. Defendant forced Plaintiffs to file this suit by offering substantially less than the amount of covered damages. Thus, Defendant failed to meet its obligation under the Policies regarding investigation and payment of the Claims without delay.

## FIRST CAUSE ACTION
### Breach of Contract

54. Plaintiffs incorporate all of the above allegations in this Complaint as if fully set forth herein.

55. The insurance policies between Plaintiffs and Defendant are binding contracts.

56. Pursuant to the terms of the insurance policies, Defendant must promptly pay for all damages covered by the Policies.

57. Plaintiffs paid all premiums and otherwise performed all conditions precedent to recovery of benefits under the Policies.

58. Defendant has failed to pay Plaintiffs for all damages from the Storm covered by the Policies.

59. By failing to pay Plaintiffs for all damages sustained from the Storm which is covered by the Policies, Defendant has breached the Policies.

60. As a direct, immediate, and proximate result of the breaches of contract by Defendant, the Plaintiffs have been damaged in an amount to be proven at trial, including, but not limited to the replacement cost value and/or actual cash value of the damages to the properties, the cost of all temporary repairs, and consequential damages.

## SECOND CAUSE OF ACTION
### Violation of the Unfair Claims Settlement Practices Act

61. Plaintiffs incorporate all of the above allegations in this Complaint as if fully set forth herein.

62. Pursuant to the laws of the Commonwealth of Kentucky, as an insurer, Defendant owed duties of good faith and fair dealing in its actions towards Plaintiffs in its investigation of the Claims.

63. K.R.S § 304.12-230 and K.R.S § 304.12-235, and the regulations promulgated thereunder, detail acts that are to be considered as unfair claims settlement practices, and provide remedies for such actions. Among other violations, Defendant committed the following violations:

   a. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the insurance policy;

9

    b. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

    c. failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which their liability has become reasonably clear;

    d. failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiffs' claims;

    e. refusing to affirm or deny coverage within a reasonable time;

    f. refusing to pay Plaintiffs' Claims without conducting a reasonable investigation based on all available information; and/or

    g. compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in an action brought by the insured.

64. Defendant's failure to pay the Claims without a reasonable foundation entitles Plaintiffs to be reimbursed their reasonable attorney's fees.

65. As a direct, immediate, and proximate result of Defendant's breaches of the Unfair Claims Practices Act Plaintiffs have suffered injuries, damages, and losses in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### Bad Faith

66. Plaintiffs incorporate all of the above allegations in this Complaint as if fully set forth herein.

67. Under common law in the Commonwealth of Kentucky, insurers have a fiduciary duty to deal fairly and in good faith with insureds.

68. Defendant lacked a reasonable basis to deny aspects of these Claims, and knew or should have known, or acted recklessly, in failing to pay the claim where there was no reasonable basis to deny the Claims.

69. Defendant either knew or should have known that there was no reasonable basis to fail to pay the Claims, and acted towards Plaintiffs with reckless disregard for whether such a basis existed. It's actions towards Plaintiffs were outrageous and with reckless indifference to the rights of Plaintiffs.

70. Defendant's refusal to pay the amounts contractually owed to Plaintiffs was arbitrary and capricious and constitutes bad faith.

71. Defendant's bad faith is evidenced by all of the facts and allegations set forth in this Complaint, including, but not limited to:

    h. Defendant's intentional or reckless failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' Claims when liability was reasonably clear;

    i. Defendant's intentional or reckless refusal to pay Plaintiffs' Claims and to otherwise honor its obligations under the Policies without conducting a reasonable investigation based on all available information;

    j. Defendant's intentional refusal to fully investigate Plaintiffs' Claims;

    k. Defendant's engaging in acts and practices toward Plaintiffs that amount to acts of baseness, vileness, and/or depravity that are contrary to the good faith duties owed to Plaintiffs;

    l. Defendant's intentional refusal to pay Plaintiffs fully for the damage caused by the Storm;

    m. Defendant's intentional failure to pay all amounts due and owing under the Policies with no reasonable or justifiable basis;

72. As a direct, immediate, and proximate result of Defendant's bad faith, Plaintiffs have suffered injuries, damages, and losses in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### Violations of K.R.S. § 304.12-235

73. Plaintiffs incorporate all of the above allegations in this Complaint as if fully set forth herein.

74. Defendant's failure to promptly and fully pay Plaintiffs' Claims was and is without reasonable foundation. Defendant failed to make a good faith attempt to properly investigate and settle Plaintiffs' Claims within 30 days, and Defendant owes Plaintiffs interest at the rate of 12% from 30 days after the filing of Plaintiffs' Claims until paid on the final claim payment.

75. Defendant failed to settle Plaintiffs' Claims within 30 days of being provided adequate information to adjust the Claims, and its delay was without reasonable foundation. Plaintiffs are entitled to recovery of their attorneys' fees and costs incurred in obtaining a claim settlement.

## V. CONDITIONS PRECEDENT

76. All conditions precedent for Plaintiffs to recover has been or will be met.

## VI. JURY DEMAND

77. Plaintiffs request that a jury be convened to try the factual issues in these causes of action and tenders or will tender the appropriate fees.

## VII. RESERVATION OF RIGHTS

78. Plaintiffs specifically reserve the right to bring additional causes of action against Defendant and to amend this complaint as necessary.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court award judgment in their favor and against Defendant as follows:

a) Plaintiffs' actual and consequential damages;

b) Pre- and post-judgment interest;

c) Trial by jury;

d) Interest at the rate of 12% because of defendant's violation of K.R.S. § 304.12-235;

e) Judgment for damages permitted a result of Defendant's violation of K.R.S. § 304.12-230 and K.R.S. § 304.12-010, including statutory attorneys' fees;

f) Bad faith damages;

g) Punitive damages;

h) Plaintiffs' costs and attorneys' fees, as allowed by contract or law; and

i) All such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: _____
Hans G. Poppe, KY Bar No. 88530
The Poppe Law Firm
8700 Westport Rd. Ste. 201
Louisville, KY 40242
(502) 895-3400
hans@poppelawfirm.com
***Counsel for Plaintiffs***